IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

v.                                                      5:21-cr-64-JA-PRL

VICTOR BERMUDEZ-RUIZ
a/k/a "Victorico Bermudez-Pereyra"
    Defendant.
_____/

REPORT AND RECOMMENDATION[1]

Defendant Victor Bermudez-Ruiz, a previously deported alien, is charged by indictment with illegal reentry into the United States in violation of 18 U.S.C. §§1326(a) and (b)(1) ("§ 1326"). (Doc. 23). His reentry, as set forth in the indictment, occurred after he had been convicted for a felony offense and removed from the United States. He moves now to dismiss the indictment and argues that § 1326 violates the Equal Protection Clause of the Fifth Amendment under the framework set forth in *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252 (1977). (Doc. 30). For the reasons discussed below, his motion should be denied.[2]

---

[1] **Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions.** *See* **Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.** *See* **11th Cir. R. 3-1.**

[2] Defendant initially requested an evidentiary hearing, which the Court denied without prejudice. (Docs. 21, 29). He subsequently sought leave to instead file additional exhibits to supplement the motion and advised that he would withdraw his request for hearing if the Court granted his motion to supplement. (Doc. 63). The United States agrees that no hearing is needed and raises no objection to the Court accepting the additional exhibits—Exhibits Q through T which include a declaration by a defense expert, a transcript of the defense experts' testimony in another case, and the experts' CVs. Upon due consideration, Defendant's motion to supplement (Doc. 63) should be **granted**.

I.  **Background**

Congress first criminalized illegal reentry into the United States in a law called the "Undesirable Aliens Act of 1929" ("1929 Act"). *See* Pub. L. 70-1018 § 1, 45 Stat. 1551. Twenty-three years later, in 1952, the 82nd Congress passed the Immigration and Nationality Act ("INA"), which remains the governing statutory framework. See *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 756 (9th Cir. 2018). The INA was designed to "revise the laws relating to immigration, naturalization and nationality" in the United States. *See* Pub. L. No. 82-414, 66 Stat. 163 (introduction). Like its predecessor, the INA included the crime for reentry of a deported alien, but with broadened liability and changed wording, and it located the offense in the United States Code as § 1326. See Pub. L. 82-414 § 276, 66 Stat. 229 (codified as amended at 8 U.S.C. § 1326).

Congress has reauthorized § 1326 several times since passing the INA, each time enhancing the deterrent value. For example, in the Anti-Drug Abuse Act of 1988, Congress added subsection (b) to § 1326, creating enhanced penalties for aliens with prior felony convictions. *See* Pub. L. No. 100-690, § 7345, 102 Stat. 4181. Congress further modified § 1326 in the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (increasing the fine provision); Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (increasing penalties); Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (*inter alia*, limiting collateral attacks on removal orders in § 1326 prosecutions); and the Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208, 110 Stat. 2009 (striking "arrested and deported, has been excluded and deported," and replacing with "denied admission, excluded, deported, or removed").

## II. Equal Protection Standards

The Fifth Amendment to the United States Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." This guarantee includes an implicit promise of equal protection under the law. *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 n.1 (2017). Here, Defendant does not argue that § 1326 is facially discriminatory nor applied in a discriminatory fashion. Rather, she argues that she was indicted for a violation of a facially neutral law that is motivated by discriminatory intent and that has a racially discriminatory impact on Mexican and Latinx individuals. This type of equal protection violation was recognized by the United States Supreme Court in *Arlington Heights*. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977).

The Supreme Court has made it clear that "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices," and that equal protection principles generally permit only limited review of validly enacted statutes. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Under *Arlington Heights*, "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." 429 U.S. at 265. A party asserting an equal protection claim must show that racial discrimination was at least "a motivating factor" for the action being challenged. *Id.* at 265-66. "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 266. This analysis involves considering factors such as the "impact of the official action," the "historical background of the decision," the "specific sequence of events leading up to the challenged decision," "[d]epartures from the normal procedural [or substantive] sequence," and the "legislative or administrative history." *Id.* at 266–68.

A facially neutral law, such as the statute at issue here, "warrants strict scrutiny only if it can be proved that the law was 'motivated by a racial purpose or object[.]'" *Hunt v. Cromartie*, 526 US 541, 546 (1999); *see also, United States v. Samuels-Baldayaquez*, No. 4:20cr83, 2021 WL 5166488, *2-3 (N.D. Ohio November 5, 2021) (explaining that finding discriminatory intent plus disparate impact does not automatically result in invalidation under *Arlington Heights*; rather, it increases the standard of review to strict scrutiny). Absent proof of a discriminatory purpose, courts apply a rational basis standard of review. *California v. U.S. Dept of Homeland Security*, 476 F.Supp.3d 994 (N.D. Calif. 2020) ("[I]f plaintiffs are able to demonstrate racial or ethnic discriminatory purpose to be a motivating factor of the [statute], then the court would apply a strict scrutiny standard of review.").

### III.   Discussion

Here, even if the *Arlington Heights* analysis applies—and the parties disagree as to its applicability[3]—Defendant has failed to meet his burden to show that § 1326 should be

---

[3] There has been significant disagreement as to whether the *Arlington Heights* framework applies to equal protection challenges under § 1326 or whether the proper standard is rational basis given Congress's plenary power to regulate immigration. *See, e.g., United States v. Rivera-Sereno*, No. 2:21-cr-129, 2021 WL 5630728, *4 (S.D. Ohio December 1, 2021) (finding that "application of *Arlington Heights* to an immigration law challenge is misplaced and contrary to long standing Supreme Court precedent" and noting that the Sixth Circuit has "repeatedly held that equal protection challenges to immigration-related statutes are subject to rational basis review"); *United States v. Amador-Bonilla*, No. CR-21-187-C, 2021 WL 5349103 (W.D. Oklahoma November 16, 2021) (finding rational basis is appropriate level of review); *United States v. Samuels-Baldayaquez*, No. 4:20cr83, 2021 WL 5166488, *2-3 (N.D. Ohio November 5, 2021) (applying rational basis and discussing long standing Supreme Court precedent ); *United States v. Novondo-Ceballos*, No. 21 CR-383 RB, 2021 WL 3570229, * 2 -3 (D. New Mexico, August 12, 2021) (declining to apply *Arlington Heights* framework); *United States v. Machic-Xiap*, No. 3:19-cr-407-SI, 2021 WL 3362738, * 9-10 (D. Oregon August 3, 2021) (rejecting argument that examination of Congress's motives in passing § 1326 is inappropriate given the deference owed Congress's legislation and analyzing under *Arlington Heights* framework); *United States v. Wence*, No. 3:20-cr-27, 2021 WL 2463567, * (D. Virgin Islands June 16, 2021) (concluding that *Arlington Heights* framework applies and noting that a "criminal immigration statute passed by Congress is not immune from scrutiny because the defendant seeks to prove the equal protection violation through a racially discriminatory Congressional motive rather than a facial classification on the basis of race."); *United States v Zepeda,* No. CR 20-0057 FMO, 2021 WL 4998418, *2 (C.D. Calif. January 5, 2021) (finding that *Arlington Heights* standard applies).

invalidated under its framework. *See Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018) ("Whenever a challenger claims that a . . . law was enacted with discriminatory intent, the burden of proof lies with the challenger.").[4]

### A. Disparate Impact

Defendant has offered evidence that the illegal reentry statute disparately impacts Mexican and Latin American defendants. Defendant points to Sentencing Commission data from fiscal years 2016 to 2020, which reveals that 97.9% of defendants prosecuted under § 1326 were Hispanic. (Doc. 64). This shows that the statute "bears more heavily on one race than another." *Washington v. Davis*, 426 U.S. 229, 242 (1976).[5] Disparate impact, however, is not sufficient to establish a constitutional violation. *Dept of Homeland Security v. Regents of the Univ. of Calif*, 140 S.Ct. 1891, 1915-16 (2020). Because facially neutral policies are often "plausibly explained on a neutral ground," the Defendant must also show an "invidious" motive. *United States v. Wence*, No. 3:20-cr-0027, 2021 WL 2463567, *10 (D. V.I. June 16, 2021) ("It is certainly true that immigration policies can be expected to have a disproportionate impact on a particular racial group[;] [b]ut because these policies will often be 'plausibly explained on a neutral ground,' the intent test requires additional evidence of an invidious motive before finding the law unconstitutional.") (citation omitted); *see also United*

---

[4] Because Defendant has not met his burden under *Arlington Heights* to trigger the application of strict scrutiny, regardless of whether the *Arlington Heights* framework applies, the Court must evaluate § 1326 under the more deferential rational basis review.

[5] The Government argues that the statistics cited by Defendant are a product of geography, not discrimination. Courts have disagreed as to whether this is properly considered. *Compare United States v. Machic-Xiap*, No. 3:19-cr-407-SI, 2021 WL 3362738, (D. Oregon August 3, 2021) (rejecting government's argument that Mexico's proximity to the United States undermines evidence of disparate impact and explaining, "[t]hat an innocent explanation may exist for the disparity does not eliminate the disparity."); *with United States v. Gutierrez-Barba*, 2021 WL 2138801, at *4 (D. Ariz. May 25, 2021) ("[N]umerous courts examining similar contentions have held that criminal immigration statutes do not disproportionately affect Mexican citizens because any disparate impact may be explained on grounds other than race, such as geographic proximity to the United States.").

*States v. Samuels-Baldayaquez*, No. 4:20cr83, 2021 WL 5166488, *2-3 (N.D. Ohio November 5, 2021) ("Absent an invidious discriminatory purpose, discriminatory impact alone is not sufficient to support a finding of unconstitutionality"); *United States v. Machic-Xiap*, No. 3:19-cr-407-SI, 2021 WL 3362738, *2 (D. Oreg. August 3, 2021) (finding that § 1326 disproportionately affects persons coming to the United States from Latin America; and noting that disparate impact, by itself, is not enough to strike down a facially neutral law). Accordingly, the Court turns to Defendant's evidence regarding discriminatory purpose.

### B. Evidence of Congress's Intent

*Arlington Heights* directs the Court to look at the motivation behind the official action being challenged. *See Arlington Heights*, 429 U.S. at 265-67 (describing intent analysis in terms of "the challenged" action). Thus, the Court must look at the motivation behind the 1952 enactment of § 1326, the statute which Defendant is charged with violating. *See, e.g., Rivera-Sereno*, 2021 WL 5630728, *5 ("Defendant is not being subject to the UAA, but rather the 1952 reenactment.").

Nevertheless, Defendant's motion primarily focuses on the legislative history surrounding enactment of the "1929 Undesirable Aliens Act," which undisputedly contained racist and discriminatory language. S*ee e.g., United States v. Machic-Xiap*, No. 3:19-cr-407-SI, 2021 WL 3362738, *15 (D. Oreg. August 3, 2021) ("racial prejudice played an invidious and overwhelming role in the creation of the Undesirable Aliens Act of 1929."). While relevant, courts have agreed that the legislative history of the 1929 Act is of limited probative value in determining Congress's motivation twenty-three years later in enacting § 1326. *See e.g., United States v. Sanchez-Felix,* No. 21-cr-310-PAB, 2021 WL 6125407, *5-6 (D. Colorado December 28, 2021) (explaining that while the historical background of the crime of illegal reentry,

6

including the 1929 Act is relevant, the views of congressional members in 1929 is entitled to less probative value in determining the views of the congressional members in 1952); *United States v. Samuels-Baldayaquez*, No. 4:20-cr-83, 2021 WL 5166488, *1 (N.D. Ohio November 5, 2021) (finding that while the legislative history of the 1929 Act "undisputedly contained racist, discriminatory language and arguments directly aimed at reducing or eliminating Mexican immigration, no such evidence of racial animus has been shown to have motivated Congress in 1952 or in later amendments); *United States v. Suquilanda*, No. 21 CR 263, 2021 WL 4895956, * 5 (S.D.N.Y. October 20, 2021) (noting that 1929 Act "was undoubtedly enacted in the face of bald racial animus towards Hispanic people," but that such evidence "bears little weight on Section 1326, which was officially reenacted as a felony offense in 1952 as part of the broader [INA]"); *United States v. Machic-Xiap*, No. 3:19-cr-407-SI, 2021 WL 3362738, *2 (D. Oregon August 3, 2021) ("the motivations of earlier legislative bodies provide only limited evidence of improper motivation for later enactments," and "the fact that racial prejudice played an invidious and overwhelming role in the creation of the Undesirable Aliens Act of 1929 does not compel the Government today to prove that Congress expressly disavowed all prior improper motives when defending a later-enacted law against an equal protection challenge, even when the historical foundation of the current law can be traced back to the earlier statute."); *United States v. Rios-Montano,* No. 19-cr-2123-GPC, 2020 WL 7226441, * 4 (S.D. Calif. December 8, 2020) ("In some situations, the legislative history of past enactments may be highly probative of the motivations of the legislators who enacted the current law, but the Court cannot automatically impute these past motivations to the current law and forgo analysis of the enacting legislature required by *Arlington Heights*."); *United States v. Wence*, No. 3:20-cr-0027, 2021 WL 2463567, *9 (D. V.I. June 16, 2021) (noting that because the historical

background of the 1929 Act was remote in time to the INA, its probative value as to the motivations of the 82nd Congress is limited).[6] Thus, like virtually every court to decide this issue to date (as reflected in the string of citations above), the Court agrees that the 1929 motive is of little weight, cannot be imputed to the current law, and is not dispositive of the intent of the subsequent 1952 legislation. *See, e.g., Rivera-Sereno*, 2021 WL 5630728, *4.

With respect to the enactment of the INA in 1952, Defendant identifies three statements that he claims are evidence of racial animus. First, he notes that in a letter submitted to Congress by Deputy Attorney General Peyton Ford he praised § 1326 for clarifying that the government could prosecute immigrants who illegally re-entered the country undetected noting that it would "aid in taking action against the conveyors and receivers of the wetback." (Doc. 63, Exhibit Q, Transcript of Evidentiary Hearing at 99:8-15). While Deputy Attorney General Ford's use of the racist epithet is troubling, his statement offers limited evidence of Congress's intent in enacting § 1326 since he was not a member of Congress. *See United States v. Sanchez-Felix*, 21-cr-310-PAB, 2021 WL 6125407, *7 (D. Colorado December 28, 2021); *United States v. Machic-Xiap*, No. 3:19-cr-407-SI, 2021 WL 3362738, *13 (D. Oregon August 3, 2021).

Next, Defendant points to President Truman's veto message, in which he explained that the INA "would perpetuate injustices of longstanding against many other nations of the world." (Doc. 63, Exhibit Q, Transcript of Evidentiary Hearing at 116:10-19). However, as other courts have noted, President Truman's veto statement "tells the Court nothing about what [he] thought about § 1326 specifically" because his "full statement reveals that his

---

[6] Indeed, even in *Carrillo-Lopez*—the only case that has found an equal protection violation—the Court considered the legislative history of both the 1929 Act and the INA and concluded that the enactment of § 1326 was motivated by discriminatory intent. *United States v. Carrillo-Lopez*, 3:20-cr-00026-MMD-WGC, 2021 WL 3667330 (D. Nev. Aug. 18, 2021).

concern with the INA [was mostly] about the INA's continued use of the quotas that disfavored immigrants from Asia and southern and eastern Europe, not with its treatment of immigrants from Latin America." *See e.g., United States v. Sanchez-Felix*, 21-cr-310-PAB, 2021 WL 6125407, *7 (D. Colorado December 28, 2021) (quoting *United States v. Machic-Xiap*, No. 3:19-cr-407-SI, 2021 WL 3362738, *13 (D. Oregon August 3, 2021)). Moreover, statements made by opponents of a bill are generally not appropriate evidence of Congress's motive for enacting legislation. *United States v. Machic-Xiap*, No. 3:19-cr-407-SI, 2021 WL 3362738, *13 (D. Oregon August 3, 2021) (*quoting Fieger v. U.S. Att'y Gen.,* 542 F.3d 1111, 1119 (6th Cir. 2008)).

Finally, Defendant focuses on a statement made by Representative Wood of Georgia in which he noted that "there was something" to the concept of "racial origins" and that "the western European races have made the best citizens in America."[7] The Supreme Court has "cautioned federal courts not to attribute the unjust prejudices of certain legislators to an entire legislative body." *United States v. Machic-Xiap*, No. 3:19-cr-407-SI, 2021 WL 3362738, *2 (D. Oreg. August 3, 2021). That one member of Congress may have had a racist motive in supporting the INA, does not mean that Congress as a whole felt the same way. *United States v. Sanchez-Felix*, 21-cr-310-PAB, 2021 WL 6125407, *7 (D. Colorado December 28, 2021).

---

[7] Specifically, Representative Wood stated: "It seems to me the question of racial origins, though I am not a follower of Hitler, there is something to it. We cannot tie a stone around its neck and drop it in the middle of the Atlantic, just because it worked to the contrary in Germany. The fact still remains that the peoples of western Europe have made good American citizens. I believe that possibly statistics would show that the western European races have made the best citizens in America." (Doc. 63, Exhibit Q, Transcript of Evidentiary Hearing at 116:23-117:8).

9

These isolated instances fall short of showing that that racial animus motivated the 1952 enactment (or subsequent modification) of § 1326.[8] Indeed, the vast majority of courts that have considered this exact issue have reached the same conclusion. *See, e.g., United States v. Maurico-Morales*, No. CR-21-298-R, 2022 WL 9996, *1 (W.D. Oklahoma January 10, 2022); *United States v. Sanchez-Felix*, 21-cr-310-PAB, 2021 WL 6125407, *7-8 (D. Colorado December 28, 2021); *United States v. Amador-Bonilla*, No. CR-21-187-C, 2021 WL 5349103 (W.D. Oklahoma November 16, 2021); *United States v. Suquilanda*, No. 21 CR 263, 2021 WL 4895956, * 5 (S.D.N.Y. October 20, 2021); *United States v. Machic-Xiap*, No. 3:19-cr-407-SI, 2021 WL 3362738, *2 (D. Oreg. August 3, 2021); *United States v. Wence*, No. 3:20-cr-0027, 2021 WL 2463567, *9 (D. V.I. June 16, 2021). *Contra United States v. Carrillo-Lopez*, 3:20-cr-00026-MMD-WGC, 2021 WL 3667330 (D. Nev. Aug. 18, 2021) ("[T]he government has failed to establish that a nondiscriminatory motivation existed in 1952 for reenacting Section 1326 that exists independently from the discriminatory motivations in either 1929 or 1952.").

### C. Rational Basis Review

Because Defendant failed to carry his burden of proving that a racially discriminatory purpose was a motivating factor in the enactment of § 1326, the statute is subject to the more deferential rational basis review. *See United States v. Wence*, No. 3:20-cr-0027, 2021 WL 2463567, *10 (D. V.I. June 16, 2021) (finding that Defendant failed to show that Congress acted with a racially discriminatory motive in enacting § 1326 and reviewing statute under rational basis standard); *Rivera-Sereno*, 2021 WL 5630728, at *4 (S.D. Ohio Dec. 1, 2021) (applying rational basis and finding "in line with most Courts across the country, . . . that

---

[8] As the government points out, Defendant has not challenged Congress's repeated modifications of the INA (1988, 1990, 1994, 1996, and 1997), all of which served to strengthen the law against unlawful reentry.

10

Congress' right to enforce immigration restrictions provide a rational basis for the Illegal Reentry statute").

Under rational basis, a statute must be upheld if it is "rationally related to a legitimate state interest." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (*per curiam*). The Court must find the challenged statute is rationally related to a legitimate interest "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313 (1993).

Applying this deferential standard, the Court has no trouble concluding that § 1326 is rationally related to legitimate government interests. The United States has a legitimate interest in regulating its borders and deterring the reentry of those who have been removed, including those who have violated immigration laws in the past or committed a felony or both. *See United States v. Wence*, No. 3:20-cr-0027, 2021 WL 2463567, *10 (D. V.I. June 16, 2021). Indeed, as a sister court has recently made clear:

> This Court need not go searching for the Congress' actual rationale for enacting § 1326. The statute's purpose is clear. It is squarely aimed at regulating immigration and deterring illegal reentry by individuals who have previously been deported. See 8 U.S.C. § 1326(a). This purpose has been widely recognized as legitimate.

*Rivera-Sereno*, 2021 WL 5630728, at *4 (S.D. Ohio Dec. 1, 2021) (citations omitted).

This interest was specifically discussed in the Congressional debate surrounding the 1990 reenactment of § 1326. *Id.* (quoting 136 Cong. Rec. 36844 (Oct. 27, 1990) (this legislation will "not disturb the basic reasons for which we have always, and will always, exclude aliens: For cases where aliens have criminal records, when they are public health risks, when they violate drug laws, when they are likely to become economic burdens on the county, or when they have previously violated U.S. Immigration laws.")). The relationship between this

interest and § 1326—which provides sanctions for repeated violations of United States immigration law—is clear, and plainly rational. *See e.g., United States v. Hernandez-Guerrero*, 147 F.3d 1075, 1078 (9th Cir. 1998) ("[I]t is plain that § 1326 is a necessary piece of the immigration-regulation framework; without the threat of criminal prosecution that it provides, Congress's immigration-regulation authority would be fatally undermined—all bark and no bite."); *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, being an inherent and unalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare" has long been recognized.). As such, because "[t]he statute's purpose of deterring illegal reentry by previously deported aliens bears a rational relationship to the government's legitimate interest in enforcing its immigration laws," Defendant's constitutional challenge fails. *See Rivera-Sereno*, 2021 WL 5630728, at *5.

### IV. Recommendation

For the reasons stated above, it is **RECOMMENDED** that Defendant's motion to dismiss the indictment (Doc. 30) be **DENIED.**

**DONE and ENTERED** in Ocala, Florida, on February 2, 2022.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties